UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SHAWN K.,

      Plaintiff,

    v.                                 Civil Action 2:25-cv-1181
                                            Magistrate Judge Chelsey M. Vascura

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

## OPINION AND ORDER

Plaintiff, Shawn K. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI"). This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 10), the Commissioner's Memorandum in Opposition (ECF No. 11), Plaintiffs Reply (ECF No. 12), and the administrative record (ECF No. 9). For the reasons that follow, the Commissioner's non-disability determination is **REVERSED**, and this matter is **REMANDED** to the Commissioner and the ALJ pursuant to Sentence Four of § 405(g).

## I.      BACKGROUND

This is not Plaintiff's first application for benefits. He apparently filed at least one prior application that was denied in 2015. (R. at 79, 81, 84.)

Plaintiff protectively filed the current SSI application in April 2023, alleging disability beginning November 10, 2022. (*Id*. at 220–26.) That application was denied initially and upon

reconsideration in 2023. At both stages, the state agency reviewing physicians found that the record contained insufficient evidence to evaluate Plaintiff's physical impairments. (*Id*. at 80, 85.)

An Administrative Law Judge ("ALJ") conducted a telephonic hearing on March 12, 2024, at which Plaintiff, who was represented by counsel, appeared and testified. (*Id*. at 58–77.) During the hearing, the ALJ observed that the record contained educational documents related to Plaintiff's prior application but lacked medical records relevant to the current application. (*Id*. at 61–62, 73–74.) The ALJ did not object to Plaintiff's request for a consultative examination, indicated that she would order one if Plaintiff understood that it would delay matters, and specifically stated that a pulmonary function study was appropriate. (*Id*. at 70–75.) The ALJ then postponed the hearing. (*Id*. at 73–74.)

The ALJ held a second telephonic hearing on August 6, 2024, at which Plaintiff, who was represented by new counsel, again appeared and testified. (*Id*. at 31–57.)  A vocational expert ("VE") also appeared and testified. At that time, the ALJ stated that she was no longer inclined to order a consultative examination because additional medical records had been submitted and, in her view, several attempts to obtain such an examination had been unsuccessful. (*Id*. at 35.) Although the hearing proceeded, the ALJ held the record open for fourteen days to allow for the submission of additional documents. (*Id*. at 56–57.) But it does not appear that any additional documents were submitted.

On September 18, 2024, the ALJ issued an unfavorable determination, which became final on August 13, 2025, when the Appeals Council denied Plaintiff's request for review. (*Id*. at 7–22, 1–6.) Plaintiff seeks judicial review of that unfavorable determination. He contends that

2

the ALJ's residual functional capacity ("RFC")[1] determination is not supported by substantial

evidence because the ALJ failed to adequately develop the record. (Pl.'s Statement of Errors 6–

10, ECF No. 10.) The Court agrees.

## II.  THE ALJ'S DECISION

The ALJ issued the unfavorable determination on September 18, 2024. (R. at 7–22.) At

step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in

substantial gainful activity since his April 18, 2023 application date. (*Id*. at 12.) At step two, the

ALJ found that Plaintiff had two severe medically determinable impairments: diverticulitis and

COPD. (*Id*.) At step three, the ALJ found that Plaintiff did not have an impairment or

---

[1] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations" "on a regular and continuing basis." 20 C.F.R. §§ 404.1545(a)(1), (b)–(c); 416.945(a)(1), (b)–(c).

[2] Social Security regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Does the claimant's severe impairment, alone or in combination with other impairments, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 13.)

The ALJ then set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except never climbing ladders, ropes or scaffolds. No work at unprotected heights or work around hazardous machinery. Occasional use of bilateral foot controls. Avoid concentrated exposure to extreme cold, heat, humidity, wetness, and pulmonary irritants.

(*Id*. at 14.) At step four, relying on the VE's testimony, the ALJ determined that Plaintiff could not perform his past relevant work. (*Id*. at 16.) At step five, the ALJ again relied on the VE's testimony and determined that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could perform, including the representative jobs of merchandise marker, routing clerk, and cashier. (*Id*. at 17.) The ALJ therefore determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. (*Id*. at 17–18.)

## III.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Although this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

4

Though the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y of Health & Hum. Serv.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV.    ANALYSIS

As previously explained, Plaintiff contends that the ALJ committed reversible error by failing to adequately develop the record. (Pl.'s Statement of Errors 6–10, ECF No. 10.) This contention has merit.

A plaintiff bears the burden of proving the existence and severity of limitations caused by his impairments. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 545 (6th Cir. 2007). But an ALJ bears the burden of developing the administrative record upon which a disability determination rests. *Lashley v. Sec'y of Health & Hum. Servs.*, 708 F.2d 1048, 1051–52 (6th Cir. 1983). An ALJ has a duty to develop the record because "[s]ocial security proceedings—unlike judicial ones—are inquisitorial, not adversarial." *Chester v. Comm'r of Soc. Sec.*, No. 11-1535, 2013 WL 1122571, at *8 (E.D. Mich. Feb. 25, 2013); *see also Sims v. Apfel*, 530 U.S. 103, 110–11

5

(2000) ("Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate facts and develop the arguments both for and against granting benefits.").

An ALJ is not required to base his RFC determination on a medical opinion.[3] *Mokbel-Aljani v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018) ("We have previously rejected the argument that a [RFC] determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ."). *See also Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (explaining that requiring an ALJ to base an RFC determination on medical opinions would transfer the statutory responsibility to determine if an individual is under a disability from an ALJ to a medical source). Nor does an ALJ err by relying on medical opinions from physicians who have reviewed an incomplete record if the ALJ considers later evidence and adequately accounts for changes in a claimant's conditions. *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) (finding no error where an ALJ relied on opinions from state agency reviewers because the ALJ considered later evidence and accounted for relevant changes in the plaintiff's condition).

Even so, pursuant to the so-called *Deskin* rule, an ALJ must obtain opinion evidence to satisfy the duty to develop the record in at least two circumstances. *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008). One circumstance arises when an ALJ is required to make medical judgments about a claimant's functional abilities by interpreting raw medical data. *Gonzalez v. Comm'r of Soc. Sec.*, No. 3:21-cv-00093, 2022 WL 824145, at *8 (N.D. Ohio Mar. 18, 2022) (citing *Alexander v. Kijakazi*, No. 1:20-cv-01549, 2021 WL 4459700,

---

[3] State agency reviewers' functional assessments are now referred to as "prior administrative findings" rather than "medical opinions." 20 C.F.R. §§ 404.1513(a)(1)–(5), 416.913(a)(1)–(5). Given prior case law, developed when the term "medical opinion" included opinions from medical sources and functional assessments from state agency reviewers, the Court sometimes uses both terms interchangeably for ease of reference.

at *9 (N.D. Ohio Sept. 29, 2021) ("Courts are generally unqualified to interpret raw medical data and make medical judgments concerning limitations that may reasonably be expected to accompany such data."); and *Mascaro v. Colvin*, No. 1:16CV0436, 2016 WL 7383796, at *11 (N.D. Ohio Dec. 1, 2016) (noting that neither the ALJ nor the court had the medical expertise to conclude whether the results of a neurological examination necessarily ruled out the existence of a disabling condition), *report and recommendation adopted*, 2016 WL 7368676 (N.D. Ohio Dec. 20, 2016)).

Second, a medical opinion must also be obtained when "a 'critical body' of the 'objective medical evidence' is not accounted for by a medical opinion and there is significant evidence of potentially disabling conditions." *Gonzalez*, 2022 WL 824145, at *8 (quoting *McCauley v. Comm'r of Soc. Sec.*, No. 3:20-cv-13069, 2021 WL 5871527, at *14–15 (E.D. Mich. Nov. 17, 2021) (cleaned up)). In that second *Deskin* circumstance, an ALJ should obtain opinion evidence that accounts for the entirety of the relevant period. *Id.* That obligation exists unless the medical evidence shows "relatively little physical impairment" and an ALJ "can render a commonsense judgment about functional capacity." *Kizys v. Comm'r of Soc. Sec.*, No. 3:10-cv-25, 2011 WL 5024866, at *2 (N.D. Ohio Oct. 21, 2011) (quoting *Deskin*, 605 F. Supp. 2d at 912) (cleaned up)).

Here, the first *Deskin* circumstance applies. The state agency physicians reviewed Plaintiff's file on June 13 and September 25, 2023. (R. at 80, 84–85.) Both found that there was insufficient evidence to evaluate Plaintiff's physical impairments. (*Id.*) At the March 2024 hearing, the ALJ indicated that she would order a consultative examination and that a pulmonary function test was appropriate. (*Id.* at 70–75.) At the August 2024 hearing, however, the ALJ

7

changed course, stating that she did so, in part, because prior attempts to obtain such an examination had been unsuccessful. (*Id*. at 35.)

The record does not support that conclusion. There is no indication that Plaintiff was contacted after the March 2024 hearing to schedule a consultative examination in connection with his current application, or that he refused to participate in one. Rather, the record reflects an unsuccessful attempt to obtain a consultative examination in connection with Plaintiff's previous application that was denied in 2015. (*Id*. at 81.)[4] As a result, with regard to his current application, Plaintiff was never referred for a consultative physical examination, no medical expert testified at either of his hearings, and none of his treatment providers offered functional assessments of his physical abilities.

Given that complete absence of medical opinion evidence[5] for Plaintiff's current application, the ALJ appears to have improperly interpreted raw medical data when assessing Plaintiff's physical RFC. *See Colaner v. Comm'r of Soc. Sec.,* No. 12-cv-00716, 2013 WL 5487037, at \*4 (S.D. Ohio Sept. 30, 2013) (holding that an ALJ's RFC determination lacked substantial support where the record contained no medical opinion evidence and the ALJ instead interpreted "raw medical data" to assess a plaintiff's RFC); *Doris B. v. Comm'r of Soc. Sec.,* No. 3:23-cv-00598, 2025 WL 676073, at \*4 (W.D. Ky. Mar. 3, 2025) (holding that "the ALJ erred

---

[4] Although the record shows Plaintiff could not be reached to schedule a psychological exam in August 2023, this occurred well before the March 2024 hearing where the ALJ stated she would order one. (R. at 86.) Furthermore, a psychological consultative examination is not relevant to Plaintiff's actual challenge, which focuses strictly on the ALJ's failure to develop the record regarding Plaintiff's physical impairments.

[5] The record contains a February 2024 note instructing Plaintiff not to lift more than ten pounds and to lie down with his feet up often following a hernia surgery. (R. at 414.) The ALJ noted that this was, at most, a temporary restriction that lacked a function-by-function analysis of Plaintiff's abilities or limits. (*Id*. at 16.) In any event, Plaintiff asserts that the record contained no medical opinions, the Commissioner does not challenge that assertion, and the Court has not independently identified any.

here by forming an RFC without obtaining *any* medical opinion evidence for his consideration"
(emphasis in original)); *Epps v. Comm'r of Soc. Sec. Admin.*, No. 1:23-cv-01462, 2024 WL
3184466, at *9 (N.D. Ohio June 4, 2024) (holding that an ALJ had the responsibility to develop
the record further "because there was no medical opinion evidence on [the plaintiff's] functional
limitations"), *report and recommendation adopted*, 2024 WL 3179664 (N.D. Ohio June 26,
2024); *Falkosky v. Comm'r of Soc. Sec.*, No. 1:19-cv-2632, 2020 WL 5423967, at *7 (N.D. Ohio
Sept. 10, 2020) (holding that an ALJ erred where "the ALJ had no medical opinions on [the
plaintiff's] functional abilities to evaluate. And any evidence of [the plaintiff's] condition that he
cited to support his RFC finding necessarily supported only his own lay conclusion regarding
[the plaintiff's] functional capacity.").

The Commissioner protests that the ALJ did not interpret raw data but instead relied on
"treatment notes or reports from medical professionals following x-rays." (Def.'s Mem. in Opp'n
3, ECF No. 9.) And as the case cited by Plaintiff explains, courts in this Circuit have drawn a
distinction between results from x-rays, MRI images, or EMGs and treatment notes or reports
prepared by medical professionals after such testing. *Lonnie F. v. Comm'r of Soc. Sec.*, No. 2:23-
cv-890, 2024 WL 3506946, at *3 (S.D. Ohio July 23, 2024).

Even so, it remains unclear how the ALJ derived the physical limits he included in
Plaintiff's RFC. For instance, documents that the ALJ reviewed without the assistance of
medical opinions included a November 2023 report[6] indicating that Plaintiff's stress test had to
be terminated after he exercised for only three minutes due to shortness of breath and fatigue
with audible wheezing. (*Id*. at 396.) The ALJ did not, however, provide record-based reasons for

---

[6] Notably, that November 2023 stress test took place after the state agency reviewers considered
Plaintiff's file in June and September of that year.

how or why that testing report,[7] which indicated that Plaintiff could not walk for more than three minutes on a treadmill, was translated into a limit for light work, which requires standing or walking up to six hours in an eight-hour workday. It therefore appears that the ALJ's light work limit was based on her lay interpretation of raw medical data. At the very least, the Court is left to speculate as to how the ALJ concluded that Plaintiff retained the capacity for such exertional demands.

The Commissioner responds by attacking the *Deskin* rule, noting that *Deskin* is not controlling and has been criticized by many district courts, including this one. (Def.'s Mem. in Opp'n 3–5, ECF No. 11.) But the evidentiary records in the cases cited by the Commissioner, unlike the one at issue here, contained medical opinions or state agency reviewer findings. *See, e.g.*, *Carr v. Comm'r of Soc. Sec.*, No. 5:23-cv-00187-BMB, 2024 WL 1556398, at *10–11, 14 (N.D. Ohio Jan. 8, 2024) (record contained findings from state agency reviewing physicians), *report and recommendation adopted*, 2024 WL 1343473 (N.D. Ohio Mar. 30, 2024); *Skibski v. Comm'r of Soc. Sec.*, No. 3:23-cv-01554, 2024 WL 3387290, at *3–4, 13–14 (N.D. Ohio July 9, 2024) (record contained opinions from consultative examiners), *report and recommendation adopted*, 2024 WL 3896771 (N.D. Ohio Aug. 22, 2024); *Barnett v. Comm'r of Soc. Sec.*, No. 3:23-cv-749, 2024 WL 2137947, at *6 (N.D. Ohio Jan. 16, 2024) (record contained findings from state agency reviewing physicians and an opinion from a consultative psychological examiner), *report and recommendation adopted*, 2024 WL 1596286 (N.D. Ohio Apr. 12, 2024); *Kopis v. Comm'r of Soc. Sec.*, No. 1:22-cv-2212, 2023 WL 7923902, at *11 (N.D. Ohio Sept. 26,

---

[7] The November 2023 stress test report also recommended that "alternative testing" be considered, including a dobutamine stress echocardiogram or a nuclear stress test. (R. at 396.) The record suggests, however, that a dobutamine test was not ordered until April 2024. (*Id*. at 482.) It is unclear if that test was ever scheduled or performed before the second hearing in August 2024 or before the ALJ issued the unfavorable determination in September 2024.

2023) (record contained findings from state agency reviewers and an opinion from a consultative examiner), *report and recommendation adopted sub nom.*, *Kopis v. Kijakazi*, 2024 WL 1131058 (N.D. Ohio Mar. 15, 2024). Accordingly, those cases are distinguishable because they involved the second *Deskin* circumstance. Thus, even assuming *arguendo* that their criticisms of *Deskin* were persuasive, they would, at most, only undermine the second Deskin circumstance. Because this case concerns the first *Deskin* circumstance, those criticisms do not apply.

The Commissioner also cites a Sixth Circuit decision holding that an ALJ's RFC finding "does not need to correspond to a particular physician's opinion." *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019) (citing *Rudd*, 531 F. App'x at 728)). From this, the Commissioner appears to extrapolate that an ALJ may formulate an RFC in the complete absence of opinion evidence. (Def.'s Mem. in Opp'n 2, ECF No. 11.)

The Court declines to make that leap. Although *Tucker*, and similar cases, hold that a limit in an RFC can be substantially supported by the record even when it does not mirror an opined limit, those cases do not hold that an ALJ may dispense with opinion evidence altogether or independently translate complex medical evidence into specific functional limits without at least considering expert guidance. *See Mokbel-Aljahmi,* 732 F. App'x at 401; *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442–43 (6th Cir. 2017); *Rudd*, 531 F. App'x at 728; *Reinartz v. Comm'r of Soc. Sec.*, 795 F. App'x 448, 449 (6th Cir. 2020). Notably, in *Tucker*, and similar cases, the evidentiary records contained medical opinions or findings from state agency reviewers, whereas here, the record does not. Indeed, the issue in those cases was whether an ALJ's RFC determination was substantially supported if it deviated from an opined limit or finding, not whether medical opinions were wholly unnecessary.

11

Accordingly, the first *Deskin* circumstance stands for the proposition that even if a limit included in an ALJ's RFC is not required to correspond exactly to a limit in a medical opinion, an ALJ has sufficiently developed the record when she has at least *considered* some medical expert opinion evidence while assessing a plaintiff's limits. *Colaner,* 2013 WL 5487037, at *4; *Doris B.,* 2025 WL 676073, at *4; *Epps*, 2024 WL 3184466, at *9; *Falkosky*, 2020 WL 5423967, at *7. The Court further finds the reasoning in *Deskin* persuasive.

The Commissioner nevertheless contends that a medical opinion was unnecessary because the ALJ considered the "limited and often unremarkable objective evidence in the record." (Def.'s Mem. in Opp'n 2, ECF No. 11.) But at the March 12, 2024 hearing, the ALJ indicated that she would order a consultative physical examination and that a pulmonary function study was appropriate. (R. at 70–75.) Her subsequent change of position was based, in part, on what appears to be a mistaken belief that attempts to procure one had been unsuccessful. (*Id*. at 35.) This strongly suggests that the ALJ would have ordered a consultative physical examination but for that mistake. And it undermines the Commissioner's characterization of opinion evidence as unnecessary.

In short, because the evidentiary record lacked any medical opinions or administrative findings regarding Plaintiff's physical functional limitation, the ALJ was required to further develop the record. The ALJ failed to do so, and she instead crafted an RFC based on her own interpretation of raw medical data. That error warrants remand.

## V.    CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's non-disability determination and **REMANDS** this case to the Commissioner and the ALJ under Sentence Four of §405(g) for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE